Banyan Mezzanine Fund II, LP v. Rowe, 2016 NCBC 35.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CVS 3701

BANYAN MEZZANINE FUND II, LP;       )
BANYAN EQUITY INVESTORS II, INC.;   )
CENTRAL ILLINOIS ANESTHESIA         )
SERVICES, LTD. PROFIT SHARING PLAN  )
TRUST; MICHAEL DEANDA; DATHREE;     )
and ACM CAPITAL FUND I, LLC,        )
Individually and as to the Members of )
TOWERCOMM, LLC, Derivatively on Behalf )      **OPINION AND ORDER**
of the TOWERCOMM, LLC,              )
        Plaintiffs,        )
                      )
        v.                  )
                      )
MICHAEL ROWE and BILL EASTON,       )
        Defendants.        )

THIS CAUSE, designated a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, references to the North Carolina General Statutes will be to "G.S."), and assigned to the undersigned Special Superior Court Judge for Complex Business Cases, comes before the Court upon Defendants Michael Rowe and Bill Easton's Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)") ("Motion to Dismiss"). On February 10, 2016, the Court held a hearing on the Motion to Dismiss.

THE COURT, having considered the Motion to Dismiss, briefs in support of and opposition to the Motion to Dismiss, and argument of counsel, concludes that the Motion to Dismiss should be GRANTED without prejudice for the reasons below.

*Spilman Thomas & Battle, PLLC by Jeffrey D. Patton, Esq. and Rice Pugatch Robinson, P.A. by Arthur Halsey Rice, Esq. and Ronald J. Lewittes, Esq. for Plaintiffs.*

*Parker Poe Adams & Bernstein, LLP by Melanie Black Dubis, Esq., Charles E. Raynal, IV Esq., Matthew H. Mall, Esq., and Catherine R. L. Lawson, Esq. for Defendant Michael Rowe.*

*Harris, Wiltshire & Grannis, LLP by Amy E. Richardson, Esq. for Defendant Bill Easton.*

McGuire, Judge.

A. *Factual and Procedural Background.*

1.      Towercomm, LLC ("Towercomm") is a Delaware limited liability company with its principal place of business and headquarters in Raleigh, North Carolina.[1] Towercomm's primary business is providing labor, work crews, and tooling to customers in the telecommunication industry, including Sprint, MasTec, Ericsson, AT&T and others, for the purposes of decommissioning or upgrading cellular towers primarily in the Southeastern United States.[2]

2.      Defendant Michael Rowe ("Rowe") served as CEO of Towercomm until October 2014.  Defendant Bill Easton ("Easton") served as the CFO of Towercomm.  Rowe and Easton were officers of Towercomm.[3]

3.      Plaintiffs Banyan Equity Investors II, Inc. ("Banyan Equity") and ACM Capital Fund I, LLC ("ACM") are members of Towercomm.[4]  Banyan Equity and ACM are referred to collectively as the "Shareholder Plaintiffs."

4.      Plaintiffs Banyan Mezzanine Fund II, LP ("Banyan Mezzanine"), Central Illinois Anesthesia Services, Ltd. Profit Sharing Plan Trust ("Central Illinois"), and dAThree all loaned money to Towercomm.[5]  ACM also loaned money to Towercomm.[6]  Banyan

---

[1] Am. Compl. ¶ 3.
[2] *Id.* at ¶ 15.
[3] *Id.* at ¶¶ 8,9.
[4] *Id.* at ¶¶ 2, 5.
[5] *Id.* at ¶¶ 4, 6-7.
[6] Am. Compl. ¶ 2.

Mezzanine, Central Illinois, and ACM are collectively referred to as the "Lender Plaintiffs." As of March 31, 2014, Towercomm owed the Lender Plaintiffs $6,644,145.00. The Lender Plaintiffs' loans were secured by a lien on Towercomm's accounts receivable and other assets.[7]

5.    Towercomm also had a line of credit with Hitachi Capital ("Hitachi"). Hitachi determined the amount of credit available to Towercomm based on a formula that used a percentage of Towercomm's reported accounts receivable.[8] Hitachi's loans to Towercomm were secured by a first lien on Towercomm's accounts receivable.[9] As of March 31, 2014, Towercomm owed Hitachi approximately $4 million.[10]

6.    As a condition of providing the loans, Plaintiff Lenders required Towercomm to provide monthly financial reports. The monthly reports contained, *inter alia*, information regarding Towercomm's accounts receivable and projected revenue.[11] The monthly reports were prepared and provided to Lender Plaintiffs by Rowe and Easton.[12]

7.    As a result of an audit of Towercomm's finances, in late October 2014, Lender Plaintiffs and Hitachi learned that Rowe and Easton had overstated Towercomm's accounts receivable and, consequently, its projected revenues.[13] This was accomplished primarily by booking as current accounts receivable work orders from customers for work that had not yet been completed and for which the customer was not yet obligated to pay.[14] The inaccurate reporting of the accounts receivable and revenue occurred from "at least the period of March

---

[7] *Id.* at ¶ 22.
[8] *Id.* at ¶¶ 18, 19.
[9] *Id.* at ¶ 22.
[10] *Id.* at ¶ 23.
[11] Am. Compl. ¶¶ 57, 58.
[12] *Id.* at ¶ 57.
[13] *Id.* at ¶ 32.
[14] *Id.* at ¶¶ 56, 59.

2014 through September 2014."[15]  The accounts receivable and revenues were overstated by approximately $4 million.[16]

8.    Plaintiff Lenders relied on the inaccurate reporting to extend loans to Towercomm.  From March 31, 2014, through October 16, 2014, Lender Plaintiffs loaned Towercomm approximately $1.8 million.[17]

9.    Hitachi relied upon the same inaccurate reporting of accounts receivable to overfund its line of credit to Towercomm by approximately $3.5 million more than should have been loaned under the formula.[18]   Towercomm "does not have the assets or cash flow to repay the Hitachi line of credit in full."[19]  As a result, Hitachi issued a notice of default to Towercomm and accelerated the credit line so that it was immediately due and payable. Plaintiffs allege that the default has put Towercomm "in a more critical financial position."[20]

10.   Lender Plaintiffs do not allege that they placed Towercomm in default or demanded payment of any loans, or that Towercomm has failed to make any payments due under the loans.  Instead, since learning of Rowe and Easton's inaccurate reporting, Lender Plaintiffs have loaned Towercomm an addition $7.2 million "in an effort to stave off bankruptcy" and "in an attempt to salvage it prior loans."[21]

11.   Plaintiffs allege that the discovery of Rowe and Easton's inaccurate financial reports caused a buyer interested in purchasing Towercomm to terminate its offer to buy Towercomm for $23 million.[22]

---

[15] *Id.* at ¶¶ 61, 63.
[16] Am. Compl. ¶ 60.
[17] *Id.* at ¶ 37.
[18] *Id.* at ¶¶ 33, 59, 63.
[19] *Id.* at ¶ 36.
[20] *Id.* at ¶ 35.
[21] Am. Compl. ¶ 38.
[22] *Id.* at ¶¶ 20-21, 26, 34.

12. In addition, during 2014, Towercomm "experience[d] a decline in business."[23] Plaintiffs allege that Defendants "could and should have taken steps in early 2014 to reduce [Towercomm's] principal cost, which was labor," but failed to do so.[24] Defendants' failure to address Towercomm's declining business constituted "gross negligence."[25]

13. Defendants' "commissions and omissions" have "resulted in the erosion and waste of Plaintiffs' collateral" leaving Lender Plaintiffs' loans "currently unsecured."[26] This "will result in a loss of all, or substantially all, of the Lender Plaintiffs' principal."[27]

14. On April 15, 2015, Shareholder Plaintiffs sent a letter to the Towercomm Board demanding that the Board "undertake litigation or other appropriate means to recover damages resulting from" the alleged action of Rowe and Easton.[28] On April 22, counsel for the Board acknowledged receipt of the demand, sought indemnification from Shareholder Plaintiffs, and asked for more information. In a conference call on May 5, Shareholder Plaintiffs refused to indemnify the Board and again made a demand on the Board to prosecute the action. To date, the Board has not made a response to Shareholder Plaintiffs' demand.[29] Plaintiffs allege that Towercomm "lacks the necessary resources to prosecute this action," and that failure by the Board to respond "effectively constitutes a negative response."[30]

15. On June 3, 2015, Plaintiffs initiated this lawsuit by filing their complaint. The action was designated No. 15-CVS-3361 by the Forsyth County Clerk of Court. On June 15,

---

[23] *Id.* at ¶ 25.
[24] *Id.* at ¶¶ 39, 40.
[25] *Id.* at ¶ 40.
[26] Am. Compl. ¶¶ 42, 43.
[27] *Id.* at ¶ 42.
[28] *Id.* at ¶ 11, Ex. A. The demand letter is addressed to the "Board of Directors of Towercomm, LLC c/o Stephen B. Wall, President and Member." The use of the term "Directors" appears to be a misnomer since the Amended and Restated Limited Liability Agreement for Towercomm, LLC" provides that the company "shall be managed exclusively by its Board of Managers," and not Directors.
[29] *Id.*
[30] *Id.*

2015, this case was designated to the North Carolina Business Court and assigned to the undersigned. On August 31, 2015, Plaintiffs filed their First Amended Complaint ("Complaint"). The Complaint allege a claim by Lender Plaintiffs against the Defendants for negligent misrepresentation (Count I), and a derivative claim by Shareholder Plaintiffs on behalf of Towercomm against Defendants for breach of fiduciary duty (Count II).

16.     On October 5, 2015, Defendants filed their Motion to Dismiss seeking dismissal of both the individual and derivative claims.[31] The Motion to Dismiss has been fully briefed and argued and is ripe for determination by the Court.

B. *Analysis.*

17.     Defendants have moved to dismiss both of Plaintiffs' claims. Defendants move to dismiss Shareholder Plaintiffs' derivative claim under Rule 12(b)(1) on the grounds that Shareholder Plaintiffs lack standing to bring a derivative claim "because they have not pleaded the pre-suit demand requirements with particularity." Defendants move to dismiss Lender Plaintiffs' negligent misrepresentation claim under Rule 12(b)(6) on the grounds that Lender Plaintiffs have failed to allege that they have suffered an actual injury, and otherwise failed to allege the elements of a negligent retention claim.

**a. Breach of Fiduciary Duty (Second Cause of Action, by Shareholder Plaintiffs)**

18.     Defendants have moved to dismiss Shareholder Plaintiffs' derivative claim for failure to comply with the demand requirements imposed by Delaware law. As "[t]he challenge to the adequacy of any pre-suit demand is, inter alia, a challenge to the Court's subject matter jurisdiction over the derivative claims," such a challenge is properly raised through Rule 12(b)(1). *Petty v. Morris*, 2014 NCBC LEXIS 67, *4 (N.C. Super. Ct. Dec. 16,

---

[31] The Motion to Dismiss initially sought dismissal, or alternatively, transfer, based on improper venue seeking transfer to Wake County. At the hearing, Plaintiffs' counsel stated that Plaintiffs did not oppose transfer to Wake County. On February 26, 2016, the Court issued an order transferring venue of this action to Wake County. Accordingly, the issue of dismissal for improper venue is now moot.

2014); *See also Krieger v. Johnson*, 2014 NCBC LEXIS 13, \*25 (N.C. Super. Ct. Apr. 30, 2014). In addressing a Rule 12(b)(1) challenge, the Court is not limited to a plaintiff's allegations, and may consider matters outside the pleadings. *Brady v. Van Vlaanderen*, 2015 NCBC LEXIS 59, \*5 (N.C. Super. Ct. June 3, 2015) (citing *Harris v. Matthews*, 361 N.C. 265, 271, 643 S.E.2d 566, 570 (2007)). As a Delaware limited liability company, the procedure for initiating a derivative action on behalf of Towercomm is governed by Delaware law.[32]

19.    Under Delaware law, a plaintiff who files a derivative claim must allege "with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority." Del. Ch. Ct. R. 23.1.[33] The requirement of a pre-suit demand serves the important purpose of permitting the company's management to determine whether or not to litigate the claim, a quintessential "decision concerning the management of the [company]," and permits the corporate managers to explore remedies other than litigation. *Spiegel v. Buntrock*, 571 A.2d 767, 773 (Del. 1990). Recognizing this principle, if a plaintiff makes a demand and that demand is rejected, the board is entitled to the presumption of the business judgment rule unless the plaintiff can "allege facts with particularity creating a reasonable doubt that the board is entitled to the benefit of the presumption." *Grimes v. Donald*, 673 A.2d 1207, 1219 (Del 1996), *overruled in part on other*

---

[32]    The parties agree that Delaware law applies to Plaintiff's derivative action.  Under the "internal affairs doctrine," which both North Carolina and Delaware recognize, only the state of organization can exercise authority to regulate "matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders." *Bluebird Corp. v. Aubin*, 188 N.C. App. 671, 657 S.E.2d 55, 63 (2008); *see also Pyott v. La. Mun. Police Emps.' Ret. Sys.*, 74 A.3d 612, 616 (Del. 2013).  This principle has been codified in the North Carolina Limited Liability Company Act, which states that "[i]n any derivative proceeding in the right of a foreign LLC, the matters covered by this Article will be governed by the law of the jurisdiction of the foreign LLC's organization."  N.C. Gen. Stat. § 57D-8-06.

[33]    The Delaware Legislature has allowed derivative suits to be brought by members on behalf of limited liability companies. *See* 6 Del. C. §§ 18–1001, *et seq.*  As a result, "case law governing corporate derivative suits is equally applicable to suits on behalf of an LLC." *VGS, Inc. v. Castiel*, 2003 Del. Ch. LEXIS 16, \*43 (Del. Ch. Feb. 28, 2003).

*grounds*, *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000). In other words, when a board refuses a pre-suit demand, the *only* permissible challenge is to the board's good faith and to the reasonableness of its investigation. *See Spiegel*, 571 A.2d at 777; *Levine v. Smith*, 591 A.2d 194, 212 (Del. 1991). Consequently,

> [T]o survive a motion to dismiss under Rule 23.1 where demand has been made and refused, a plaintiff must allege particularized facts that raise a reasonable doubt that (1) the board's decision to deny the demand was consistent with its duty of care to act on an informed basis, that is, was grossly negligent; and (2) the board acted in good faith, consistent with its duty of loyalty. Otherwise the decision of the board is entitled to deference as a valid exercise of its business judgment.

*Ironworkers Dist. Council of Philadelphia & Vicinity Ret. & Pension Plan v. Andreotti*, 2015 Del. Ch. LEXIS 135 at *82-83 (Del. Ch. May 8, 2015). "The pleading burden imposed by this standard is a heavy one," and "[v]ague or conclusory allegations do not suffice." *Id.* (citations omitted).

20. In this case Shareholder Plaintiffs do not allege that Towercomm's Board expressly rejected their demand to pursue claims against Rowe and Easton.[34] Instead, Plaintiffs contend that the Board had not responded to the demand at all as of the time they filed this action and that the failure to respond "effectively constitutes a negative response."[35] "Relatively few Delaware cases have arisen in which a stockholder attempts to move forward with a derivative suit before a board formally responds to the stockholder's demand." *Rich ex. Rel. Fuqi Int'l, Inc. v. Yu Kwai Chong,* 66 A.3d 963, 976 (Del. Ch. 2013) (emphasis in the original). Nevertheless, it is clear that a board of directors has an affirmative duty to

---

[34] Defendants have not challenged the sufficiency of the contents of the demand letter. The demand letter, attached to the Amended Complaint, is highly detailed and "identif[ies] the alleged wrongdoers, describe[s] the factual basis of the wrongful acts and the harm caused the corporation, and request[s] remedial relief." *Allison v. General Motors Corp.*, 604 F.Supp. 1106, 1117 (D. Del.), *aff'd*, 782 F.2d 1026 (3d Cir. 1985).
[35] Am. Compl. ¶ 11.

evaluate a shareholder demand. *Id*. While a shareholder must allow the business entity an adequate and reasonable amount of time under the circumstances to respond to the demand, a corporation is "under a reciprocal duty to make an earnest effort to consider the shareholder's demand and to decide upon a response within a reasonable time." *Mills v. Esmark, Inc.*, 91 F.R.D. 70, 73 (N.D. Ill. 1981). Delaware requires that the board "promptly" advise "what action the board has taken in response to the demand." *Grimes v. Donald*, 673 A.2d at 1218. Under circumstances where a "board has taken no action and has simply failed to address the demand, the stockholder satisfies Rule 23.1 and may proceed derivatively if he demonstrates that the failure to act was wrongful." *Rich*, 66 A.3d at 976. A plaintiff may accomplish this by alleging facts that demonstrate that the board's lack of a response was not "consistent with its fiduciary duties." *Id*. A board's actions are not protected by the business judgment rule "in cases of bad-faith conduct, such as . . . 'where the fiduciary intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties.' " *Id*. Accordingly, the Court must determine whether the allegations in this case support the conclusion that the Towercomm Board has acted in a manner inconsistent with its duties and obligations such that Shareholder Plaintiffs should be permitted to proceed with their claim.

21.     The Amended Complaint alleges that Plaintiffs made their demand on the Towercomm Board by letter dated April 15, 2015, and that on April 22, 2015, the Board "acknowledged receipt of the demand, sought indemnification from the Shareholder Plaintiffs, and requested additional information."[36] On May 5, 2015, Shareholder Plaintiffs advised counsel for the Board in a telephone conference that Shareholder Plaintiffs would not indemnify the Board. Plaintiffs filed the Amended Complaint on August 31, 2015, and,

---

[36] *Id*. at ¶ 11.

as of that date, no response had been provided by the Board to Shareholder Plaintiffs demand.  In addition, as of the date of the hearing on this motion in February, 2016, the Towercomm Board still had not made a response to the demand.  Plaintiffs contend that the Boards' failure to respond is "grossly negligent" and constitutes an "abdication of its obligation" to make an informed decision on Plaintiffs' demand.[37]

22.    The Amended Complaint does not contain any allegations regarding what action the Towercomm Board undertook after the May 5, 2015 telephone conference. Shareholder Plaintiffs have not alleged that the Board commenced an investigation or took any other action to address the demand. In opposition to the Motion to Dismiss, however, Plaintiffs filed affidavits that support the conclusion that the Towercomm Board has not taken any additional action on Shareholder Plaintiffs' demand since the telephone conference.  As of April 15, 2015, there were five (5) members of the Towercomm Board:  John A. Miller, Richard M. Starke, James W. Davidson, Michael de Anda, and Steven B. Wall.[38] Plaintiffs filed affidavits from Miller, Starke, Davidson, and de Anda, in which each of them states that "had the subject matter" contained in Shareholder Plaintiffs' demand letter "been discussed by the TowerComm Board, [they] would have excluded [themselves] from any such discussion, deliberation, vote or decision-making process."[39] This testimony strongly infers, if it does not establish, that the Towercomm Board has never discussed, investigated or taken other action to consider Plaintiffs' demand after the May 5, 2015 telephone conference.

23.    Defendants contend, however, that the Towercomm Board's actions, or the Board's inaction, are directly attributable to the Shareholder Plaintiffs.  Defendants have presented evidence that Miller, Starke, and Davidson are themselves principals of

---

[37] Pls.' Resp. Opp. Mot. Dismiss pp. 8,9.
[38] Davidson Aff. (Feb. 1, 2016) ¶ 3.
[39] *Id.* at ¶ 6; Miller Aff. ¶ 5; Starke Aff. ¶ 5; de Anda Aff. ¶ 5.

Shareholder Plaintiff Banyan Equity Investors II, Inc., and are Managing Directors of Banyan Fund.[40] James Martin, a Managing Partner of Shareholder Plaintiff ACM, though not a member of the Towercomm Board, "frequently participated in Board-level discussions and had significant influence on the Board's decision-making."[41] Michael de Anda is identified as a "member" of Towercomm, and was a Shareholder Plaintiff, in the Complaint originally filed in this action.[42] In addition, de Anda was a principal of Lender Plaintiffs Central Illinois and daThree.[43] Defendants assert that "[f]or all practical purposes, the Shareholder Plaintiffs *are* the Towercomm Board,"[44] and that Plaintiffs' claim that the Board "abdicated its obligation" to make a decision regarding Shareholder Plaintiffs' demand "is a farce."[45] In other words, Defendants contend that the Shareholder Plaintiffs themselves controlled the Towercomm Board's ability to take action regarding Shareholder Plaintiffs' demand. Plaintiffs do not dispute that Miller, Starke, Davidson, and de Anda are closely aligned with the Shareholder Plaintiffs. Instead, Plaintiffs claim only that Miller, Starke, Davidson, and de Anda did not take any specific actions regarding Shareholder Plaintiffs' demand and would have recused themselves from consideration of the demand if it had been discussed by the Board.[46] Even if they would need to recuse themselves from deliberation

---

[40] Rowe Aff. (Dec. 9, 2015) ¶¶ 3-5, 8-9.

[41] *Id.* at ¶¶ 6-7.

[42] Compl. ¶ 8. Although de Anda's name remained in the caption, the parties have indicated that de Anda was removed as a Plaintiff in this lawsuit and the allegations regarding de Anda do not appear in the Amended Complaint.

[43] *Id.* at ¶ 9.

[44] The Towercomm, LLC Amended and Restated Limited Liability Agreement (June 7, 2011) provides that "the composition of the Board of Managers shall be as follows: (i) Three (3) individuals (the "Mezzanine Fund Managers") designated by Banyan Equity Investors II, Inc. ("Mezzanine Fund"); (ii) One (1) individual (the "Wall Manager") designated by Steven B. Wall; (iii) One (1) individual (the "de Anda Manager") designated by Michael de Anda ("de Anda"); [and] (iv) two (2) individuals to be elected by at least 4 of the managers specified in Section 7.1(b)(i), (ii), and (iii). (§7.1(b)). It is not disputed, however, that Towercomm operated at all times relevant to this action with only five board members. Davidson Aff. ¶ 3.

[45] Defs.' Reply Br. Supp. Mot. Dismiss p. 2.

[46] Although Miller, Starke, Davidson, and de Anda do not explain why they would have recused themselves from the Towercomm Board's consideration of Plaintiffs' demand had it been discussed,

and decision on Shareholder Plaintiffs' demand, Plaintiffs do not explain why Miller, Starke, Davidson, and de Anda would not be obligated as members of the Board, and in the interest of Towercomm, to seek action on the demand from the remaining members of the Towercomm Board.[47] Shareholder Plaintiffs cannot rely on the inaction of its Board members to claim that the Towercomm Board has failed in its obligations to respond to the demand.

24. The Court concludes that under the unique set of circumstances present in this case, it would not be equitable to permit Shareholder Plaintiffs to satisfy their pleading burden by relying upon the inaction of the Towercomm Board, and that Shareholder Plaintiffs have failed to establish that they should be allowed to proceed with their derivative action before receiving a response to their demand. *See Rich*, 66 A.3d at 976 (requiring a plaintiff to plead facts that demonstrate that the board's lack of a response was not "consistent with its fiduciary duties" in order to maintain a derivative action before receiving a demand response). Shareholder Plaintiffs allege that there has been no response to their demand, but the evidence shows that a majority of members of the Towercomm Board are aligned with Plaintiff Shareholders. Accordingly, to the extent the Towercomm Board's failure to respond to the demand breached fiduciary duty, that failure is at least partially attributable to the inaction of Shareholder Plaintiffs own representatives on the Board. Accordingly, Shareholder Plaintiffs' derivative claim should be DISMISSED without prejudice.[48]

---

the clear implication of their testimony is that they would have considered it a conflict of interest because of their affiliation with Shareholder Plaintiffs.

[47] It also is puzzling, given Shareholder Plaintiffs access to the members of the Towercomm Board, that Plaintiffs have not attempted to explain why the remaining member or members of the Board have not acted upon or responded to the demand.

[48] The Court recognizes that the Towercomm Board may yet respond to Shareholder Plaintiffs' demand. Accordingly, Shareholder Plaintiffs should be permitted opportunity to refile their derivative claim in the event the Towercomm Board denies to the demand. *Charal Inv. Co. v. Rockefeller*, 1995 Del. Ch. LEXIS 132 *14 (Del. Ch. 1995).

**b. Negligent Misrepresentation (First Cause of Action, by Lender Plaintiffs)**

25. Defendants also challenge Lender Plaintiffs' claim of negligent misrepresentation, moving to dismiss that claim under Rule 12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must determine "whether, as a matter of law, the allegations of the complaint . . . are sufficient to state a claim upon which relief may be granted." *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). In making this determination, the Court must take all well-pleaded allegations of the complaint as true. *Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970). Nonetheless, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Strickland v. Hedrick*, 194 N.C. App. 1, 20, 669 S.E.2d 61, 73 (2008). A complaint can be dismissed under Rule 12(b)(6) if: (1) the complaint on its face reveals that no law supports plaintiff's claim; (2) the complaint reveals on its face the absence of fact sufficient to make a good claim; or (3) some fact disclosed in the complaint necessarily defeats the plaintiff's claim. *Mileski v. McConville*, 199 N.C. App. 267, 269, 681 S.E.2d 515, 517 (2009) (citing *Oates v. Jag, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985))

26. Lender Plaintiffs allege that, beginning in March 2014, Defendants sent Lender Plaintiffs monthly financial reports that contained inaccurate, overstated accounts receivable, and that for "at least the period of March 2014 through September 2014" Defendants reported inaccurate and overstated "eligible" accounts receivable.[49] Plaintiffs also allege that "Rowe in an effort to induce the Lender Plaintiffs to forebear [*sic*] and provide additional funding to Towercomm misrepresented the likelihood of a third party purchasing the company."[50] Plaintiffs allege that Defendants knew or should have known the

---

[49] Am. Compl. ¶¶ 56, 62, 63.
[50] *Id.* at ¶ 64.

representations were false, or that they made the representations without knowing whether they were true or false.[51] Plaintiffs relied on Defendants' misrepresentations "to lend additional funds, extend the time for payment of the loans, and/or forebear [*sic*] on calling their loans," and as a result have suffered damages.[52] Defendants contend Lender Plaintiffs' claim must be dismissed because they have not alleged a present and actual injury resulting from the alleged misrepresentations, and because they failed to plead the claim with the particularity required by Rule 9(b). Alternatively, Defendants argue that the allegations in the Complaint establish that Lender Plaintiffs did not rely on misrepresentations in making loans before March 2014 or after October 2014. Accordingly, Plaintiffs negligent misrepresentation claim should be dismissed as to those periods.

27.     As an initial matter, the Court must decide the appropriate law to be applied to Plaintiffs' negligent misrepresentation claim. Defendants, without discussion of their choice of North Carolina law, argue for dismissal pursuant to North Carolina law. Plaintiffs do not concede that North Carolina law governs,[53] but nevertheless argue North Carolina law in opposition to the Motion to Dismiss. North Carolina applies a *lex loci delicti* test to tort claims, applying the law of the state where the injury occurred. *Boudreau v. Baughman,* 322 N.C. 331, 335, 368 S.E.2d 849, 853-54 (1988). The lex loci test applies to claims for negligent misrepresentation. *Harco Nat'l Ins. Co. v. Grant Thornton,* 206 N.C. App. 687, 696-97, 698 S.E. 2d 719 (2010).

28.     Here, the allegations in the Amended Complaint do not provide a ready answer as to where Lender Plaintiffs' injury occurred. Plaintiffs alleged that their claims "accrued in Raleigh, North Carolina,"[54] but the Court is not required to accept this legal conclusion as

---

[51] *Id.* at ¶ 66.
[52] *Id.* at ¶¶ 67-68.
[53] *See* Pls.' Resp. Opp. Mot. Dismiss p. 9, n. 9.
[54] Am. Compl. ¶ 10.

fact in assessing the Motion to Dismiss. Under North Carolina law, a cause of action for negligent representation "does not accrue before the misrepresentation is discovered, neither does it accrue until the misrepresentation has caused claimant harm." *Jefferson-Pilot Life Ins. Co. v. Spencer,* 336 N.C. 49, 56, 442 S.E.2d 316, 320 (1994). Plaintiffs allege that the inaccurate reporting of the accounts receivable was revealed through an audit of Towercomm's financial records and "became apparent" in late October 2014.[55] It might be reasonable to assume, but is not alleged, that the audit took place at Towercomm's place of business in North Carolina. Plaintiffs do not, however, allege how or where the results of the audit were communicated to Lender Plaintiffs. Lender Plaintiffs maintain their principal places of business in Florida and in California, but North Carolina has rejected a "bright line rule" that an economic injury to a plaintiff business occurs at that plaintiff's principal place of business. *Harco,* 206 N.C. App. at 697, 689 S.E.2d at 725-26. Plaintiffs allege that they were harmed by Defendants' misrepresentations because they caused Hitachi to place Towercomm in default, caused the termination of a "pending sales transaction," and caused "erosion and waste to" the accounts receivable that constituted Plaintiffs' collateral.[56] To the extent these alleged harms are relevant to determining where Lender Plaintiffs suffered injury, however, the Court is not able to determine where Lender Plaintiffs suffered injury based on the facts pleaded in the Amended Complaint. *See e.g., Id.* at 698, 689 S.E.2d at 725-26 (concluding that the plaintiff had its principal place of business in Illinois, but suffered injury in North Carolina when Department of Insurance seized the plaintiff's funds held in a North Carolina trust account).

29. Fortunately, the Court need not resolve the choice of law question at this time in order to address Defendants' primary argument. North Carolina, Florida, and California

---

[55] *Id.* at ¶ 32.
[56] *Id.* at ¶¶ 34, 35, 43.

law all require a plaintiff to plead injury or harm as an element of a claim for negligent misrepresentation. *Compare Helms v. Holland*, 124 N.C. App. 629, 634-35, 478 S.E.2d 513, 517 (1996) *with Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) and *Rufini v. CitiMortgage, Inc.*, 227 Cal. App. 4th 299, 309, 173 Cal. Rptr. 3d 422, *modified on other grounds*, 2014 Cal. App. LEXIS 668 (Cal. App. 2014). Accordingly, if Lender Plaintiffs have not sufficiently alleged injury arising from the negligent misrepresentations, Defendants are entitled to prevail on their Motion to Dismiss.

30. The question of whether Lender Plaintiffs allege an actual injury sufficient to support their claim for negligent misrepresentation is a difficult one.[57] Lender Plaintiffs have not notified Towercomm of defaults on, nor accelerated or demanded payment of, any of their respective loans. There is no allegation that Towercomm failed to make any payments due under the loans. Instead, Lender Plaintiffs allege that because their loans are subordinate to Hitachi's line of credit and Towercomm is insolvent, they are unsecured. Plaintiffs claim that this "*will* result in a loss of all, or substantially all, of the Lender Plaintiffs' principal."[58] This kind of future, possible harm is not a cognizable pecuniary loss for negligent misrepresentation in North Carolina. In *Harco National Insurance Co. v. Grant Thornton LLP*, the North Carolina Court of Appeals noted that "the mere possibility of an injury" would not support a claim for negligent misrepresentation. 206 N.C. App. 687, 697-98 (2010) (citing

---

[57] Defendants brought the Motion to Dismiss under Rules 12(b)(1) and 12(b)(6). Mot. Dismiss, p. 1. Defendants, however, have not expressly argued that Lender Plaintiffs' claim for negligent misrepresentation should be dismissed for lack standing pursuant to Rule 12(b)(1). Rather, Defendants argue that this claim should be dismissed under Rule 12(b)(6) on the grounds that Lender Plaintiffs have not alleged an essential element of a claim for negligent misrepresentation, actual injury. Actual injury, however, is also a critical element in proving that a plaintiff has standing to bring an action. *Neuse River Found. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 113-14, 574 S.E.2d 48, 51 (2002). Whether challenged as a failure to state a claim for negligent misrepresentation, or a challenge to Lender Plaintiffs' standing, however, the question before the Court is the same: whether Lender Plaintiffs have alleged that they suffered an injury. *See Tingley v. Beazer Homes Corp.*, 2008 U.S. Dist. LEXIS 34303, *5-6 (W.D.N.C. Apr. 25, 2008).
[58] Am. Compl. ¶¶ 41, 42 (emphasis added).

*Pierson v. Buyher,* 330 N.C. 182, 186, 409 S.E.2d 903, 906 (1991)); *see also Coker v. DaimlerChrysler Corp.,* 172 N.C. App. 386, 396-397 (2005) (noting that the plaintiffs' allegation that they had been damaged by "a hypothetical and an unsubstantiated diminution of value" of the defective mobile homes they purchased was insufficient to establish standing because "[t]heir claims are too speculative and illusory to show a legal injury in fact"). As in *Harco*, Plaintiffs here simply plead the possibility of some future injury. Indeed, Plaintiffs allege that Lender Plaintiffs continued to lend additional funds to Towercomm after discovery of the misrepresentations in the hope that Towercomm can regain financial strength and repay Lender Plaintiffs' loans in full.[59] In other words, the allegations in the Amended Complaint establish that Lender Plaintiffs have not yet suffered any injury resulting from failure to repay their loans to Towercomm, and may never suffer such injury. To paraphrase the Court in *Pierson v. Buyher*, Lender Plaintiffs have alleged "no more than the *possibility* of future injury . . . .*Maybe* [they will] suffer a monetary loss. Maybe [they won't]". 330 N.C. at 186, 409 S.E.2d at 906 (emphasis in original).

31.     The decision in *Jackson National Life Ins. Co. v. Ligator*, cited by Defendants, is instructive because of the similarity of its facts to the present action. 949 F. Supp. 200 (S.D.N.Y. 1996). In *Jackson National*, the plaintiffs financed the defendants' purchase of IPM Products Corporation ("IPM") through an investment of approximately $34 million structured as equity and debt. *Id.* at 201. After the closing of the sale, the plaintiffs learned that the defendants had overstated IPM's operating income and made other false representations in order to inflate the purchase price. *Id.* at 202. The plaintiffs sued the defendants for, *inter alia*, negligent misrepresentation. In their complaint, the plaintiffs alleged that "plaintiffs' $34 million investment in the securities of IPM Products Corporation

---

[59] *See* Am. Compl. ¶ 38.

has been rendered valueless, or has substantially lost its value due to the unlikelihood of full repayment." *Id.* at 202-03. The plaintiffs alleged that the defendants had failed to make certain interest payments, but "notably fail[ed] to allege that any such payments were due." *Id.* at 203. In addition, "none of the notes at issue" were yet due and the plaintiffs had not alleged that they had accelerated any of the loans. *Id.* at 207. Finally, the court also noted that a different action initiated against IPM might result in IPM being able to pay the plaintiffs' notes when they became due. *Id.* The court dismissed the claim for negligent misrepresentation, holding:

> Jackson National itself has alleged only that "plaintiffs' $ 34 million investment in the securities of IPM Products Corporation has been rendered valueless, or has substantially lost its value, due to the *unlikelihood* of full repayment. Plaintiffs thus have been substantially damaged in an amount yet to be determined." A mere "unlikelihood" is simply not sufficient to support an action at this time.

949 F. Supp. at 207-208 (emphasis in original).

32.     Nevertheless, Plaintiffs contend that they have sufficiently alleged injury by claiming that because of Defendants' misrepresentations they "were induced to forbear on calling their existing debt, extend the time for payment of loans, and loan additional funds."[60] In support of this argument, Plaintiffs rely on *Rufini v. CitiMortgage, Inc.*, 227 Cal. App. 4th 299, 309, *modified on other grounds*, 2014 Cal. App. LEXIS 668 (Cal. App. 2014).[61] In *Rufini*, the plaintiff borrower took out a home mortgage loan with the defendant lender in July 2007. In June 2009, the defendant approved the plaintiff for a loan modification and told the plaintiff he would receive a permanent modification. Subsequently, the lender reneged on the promised modification and in September 2010, placed the plaintiff in default. After the default, the plaintiff and the defendant negotiated over a modification of the loan and the

---

[60] Pls.' Resp. Opp. Mot. Dismiss p. 12.
[61] *Id.*

defendant assured the plaintiff that the lender would not foreclose on the mortgage. The plaintiff alleged that he spent "hundreds of hours in loan modification negotiations and lost the opportunity to pursue other ways to avoid foreclosure." 227 Cal. App. 4th at 308. Unbeknownst to the plaintiff, defendant sold the loan to another lender and the new owner foreclosed on the plaintiff's home. *Id.* at 303. The plaintiff sued the defendant lender alleging a claim for negligent misrepresentation. *Id.* at 309. The plaintiff alleged that the defendant lender knew that it intended to sell the loan, that the new owner would foreclose, and that modification would not be reached with the plaintiff. The trial court dismissed the plaintiff's negligent misrepresentation claim. On appeal, the defendant argued that the plaintiff's claim "was unsupported by a valid allegation of damages." *Id.* The appeals court reversed the dismissal, holding that the plaintiff's allegations that he lost the opportunity to pursue other financing and that he had spent "hundreds of hours" on negotiations over the modification were sufficient to allege that he suffered an injury or harm. *Id.*

33. Plaintiffs' reliance on *Rufini*, however, is misplaced, and that case highlights the types of allegations missing from the Amended Complaint in this case. Lender Plaintiffs contend that "the parting with funds and the loss of use of funds . . . constitute harm and injuries in fact."[62] Lender Plaintiffs, however, have not alleged that the "loss of the use of funds" resulted in lost opportunities to make loans to entities other than Towercomm, nor that they expended substantial time and resources in negotiating the loans based on the misrepresentations. Plaintiffs have not attempted to explain how the "erosion" of the collateral for the loans constitutes a current injury when the loans in question are not yet due and there has been no attempt to collect on the loans. Lender Plaintiffs may very well

---

[62] *Id.*

be injured if Towercomm is not able to satisfy its repayment obligations under the loans in the future, but they have not suffered that injury yet.

34.     The Court concludes that allegations in the Amended Complaint establish that Lender Plaintiffs have not yet suffered an injury resulting from Defendants' alleged misrepresentations, and Lender Plaintiffs claim for negligent misrepresentation should be DISMISSED without prejudice.

THEREFORE, IT IS ORDERED that Defendants' Motion to Dismiss is GRANTED without prejudice.

This the 10th day of May, 2016.


       /s/ Gregory P. McGuire       
Gregory P. McGuire
Special Superior Court Judge
  for Complex Business Cases